UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

(S3) 1: 14-CR-616 (PAC)

V.

**OPINION & ORDER**

DERVAL LAZZARI,

       *Defendant,*

and

ANAHI LAZZARI, SUSANA LAZZARI,
AND CHRISTIAN BASORA,

       *Sureties.*

------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

    Sureties SUSANA LAZZARI, ANAHI LAZZARI, and CHRISTIAN BASORA (collectively, "Sureties") of defendant DERVAL LAZZARI ("Defendant"), move for remission of bail forfeiture pursuant to Federal Rule of Criminal Procedure 46(f)(4). Sureties' motion is DENIED.

## BACKGROUND

    On August 7, 2014, Defendant was arrested and charged with conspiracy to commit wire fraud and wire fraud. Dkt. 1. He was released that day on a $500,000 personal recognizance bond, to be co-signed by his estranged wife, SUSANA LAZZARI, his daughter, ANAHI LAZZARI, and his daughter's fiancée, CHRISTIAN BASORA, and secured by a piece of residential property at 217-79 Corbett Road, Bayside, New York, owned by SUSANA

1

LAZZARI (hereinafter the "Bayside Property").[1] Dkt. 4. The Government maintains that when Sureties signed the bond, "they were warned of the penalties and sanctions for failing to fulfill the conditions of [Defendant's] release." Dkt. 65 at 1. Defendant was indicted on September 11, 2014. Dkt. 8. After he failed to report to Pretrial Services on October 21, 2015 and November 4, 2015, and did not appear at his arraignment on a superseding indictment adding a charge of conspiracy to obstruct justice on November 9, 2015, this Court issued a warrant for his arrest. Dkt. 34, 37. On November 30, 2015, this Court issued an order (the "November 2015 Order") directing entry of judgment of $500,000, jointly and severally against Defendant and Sureties; forfeiting the Bayside Property; and appointing a receiver to sell the Bayside Property (the "Receiver"). Dkt. 48.

In November 2015, the Government and the United States Marshal's Service ("USMS") started an investigation to find and apprehend Defendant. Dkt. 65 at 2. The USMS interviewed Sureties in the weeks following Defendant's disappearance, but "[n]one provided any information that assisted in [Defendant's] apprehension." *Id.* The USMS ultimately learned that Defendant had traveled from New York to Texas via bus, where he picked up a motorcycle he had previously shipped to Texas. *Id.* He then crossed the border by motorcycle, and eventually went to Argentina. *Id.* The USMS worked with Argentine Federal Police ("AFP") to track Defendant to a residence outside of Buenos Aires, Argentina. *Id.* Defendant proved to be elusive. *Id.* Eventually, Defendant surrendered at a police station in October 2016. *Id.* He is currently fighting extradition. *Id.*

On November 9, 2016, the Receiver filed his report, requesting approval for a sale

---

[1] The Government's opposition letter describes ANAHI LAZZARI as Defendant's estranged wife and the Bayside Property owner. Dkt. 65 at 1. This appears to be in error: other court papers indicate that SUSANA LAZZARI is Defendant's estranged wife and owner of the Bayside Property, and that ANAHI LAZZARI is Defendant's daughter. Dkt. 62 at 1; Dkt. 52 at 2.

contract for the Bayside Property for $950,000, which the Receiver recommended as a fair price. Dkt. 56 at 2. No objections to the proposed sale were filed by any interested party within the subsequent ten day period, as permitted by the November 2015 Order. On November 28, 2016, the Court approved the report and directed the Receiver to proceed with the sale. Dkt. 57. Later that day, Sureties filed their motion. Dkt. 60–62.

Sureties now move for whole or partial remission of the forfeited $500,000 bond; and, if granted, for an order holding the sale of the Bayside Property in abeyance and permitting the Sureties to pay the bond by other means. Dkt. 60. The asserted grounds are that justice favors at least partial remission of forfeiture, or that justice does not require forfeiture. Dkt. 62 at 5. The arguments are rejected.

## DISCUSSION

### I. Legal Standard

Federal Rule of Criminal Procedure 46(f)(4) allows courts to remit "in whole or in part" a bail forfeiture judgment under the same conditions specified in Rule 46(f)(2), which provides for a set aside where it "appears that justice does not require bail forfeiture." Remission is discretionary. United States v. Accardi, 241 F.Supp. 119, 120 (S.D.N.Y. 1964). A party challenging a forfeiture bears the burden of establishing the grounds for remission. United States v. Gambino, 17 F.3d 572, 574 (2d Cir. 1994). Courts must consider several factors in determining whether remission is warranted:

> "whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; … any explanation or mitigation factors presented by the defendant; … whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family."

Id. (quoting United States v. Carvajal, 674 F.Supp. 973, 974 (E.D.N.Y. 1987)). The Gambino

3

Court also added a factor: "the deterrence value of total forfeiture." *Id.* at 575; *see* United States v. Santana, No. 06-CR-1083 (DC), 2009 WL 1321783, at *1 (S.D.N.Y. May 8, 2009) ("If sureties could routinely escape liability . . . their signature would become largely meaningless.").

## II. Analysis of the Gambino Factors

### a. *Willfulness of Defendant's Breach*

Defendant breached his bail conditions by failing to report to Pretrial Services on October 21, 2015 and November 4, 2015, and by failing to report for his arraignment on November 9, 2015. Dkt. 42 at 2. The Government's earlier suspicion that Defendant had willfully fled to Argentina ultimately proved correct. *See* Dkt. 49 at 2–3 ("[N]othing . . . suggest[s] that Mr. Lazzari intends to show up again. He's off the grid at this point. We suspect strongly that he has fled the country to Argentina . . . ."); Dkt. 55. Defendant appears to have deliberately planned his escape in shipping a motorcycle to Texas prior to his arrival there, which he then used to cross the United States border. Dkt. 65 at 2. Moreover, Defendant is now fighting extradition, further bolstering the inference that his breach was intentional. *Id.* at 3. There is no evidence to the contrary. It is clear beyond a shadow of a doubt that Defendant's breach was willful.

### b. *Government's Cost, Inconvenience and Prejudice*

Sureties contend that since Defendant "remained at large less than a year [,] it is extraordinarily unlikely that the [G]overnment incurred costs in locating and apprehending him that approached any more than a fraction of the total bail amount." Dkt. 62 at 5. This is sheer speculation. To the contrary, this nearly-year-long, multi-agency search involving the USMS, the Office of International Affairs, and Argentinian Police has resulted in "significant" cost, prejudice and inconvenience to the Government. Dkt. 65 at 3. Defendant remains in Argentinian custody fighting extradition, which could take weeks or even years, and will prolong

4

and increase these costs. *Id.* at 3. Further, these factors are not measured against the amount of the bond, as Sureties suggest. *See* United States v. Gallego, No. 02-CV-5987 (ILG) 2003 WL 1193536, at *2 (E.D.N.Y. Jan. 29, 2003) ("[B]ecause [Defendant] is still at large [in Colombia], the amount of delay caused by his violation, and thereby the prejudice to the government, is unknowable and potentially indefinite.").

c. *Explanation or Mitigation Factors*

Sureties do not provide any explanation or mitigation factors for Defendant's breach. This in stark contrast to the mitigating factors presented in United States v. Smith, No. 08-CR-379 (RPP) 2010 WL 2010870, at *3 (S.D.N.Y. May 18, 2010), where one surety was included only "as moral suasion," and another surety had Alzheimer's disease. There is no factual explanatory basis for remitting any portion of the $500,000 bond.

d. *Sureties' Assistance in Apprehending Defendant*

In her affidavit, SUSANA LAZZARI claims:

"In the late summer I started hearing rumors that my ex-husband was hiding in Argentina. I went to the local police department and explained the case, but was told they could do nothing. Later I received a call from him and urged him to turn himself in because he was hurting the family and costing me and my daughter enormous financial and emotional distress. On October 14, 2016, I heard that he was arrested."

Dkt. 61 at ¶ 14. There is no support for these broad assertions; they are manifestly insufficient. There is no elaboration of what local police department Ms. LAZARRI went to, with whom she spoke, what information she imparted, or how helpful the supposed information was. In fact, nothing is presented which would lead to the conclusion that Ms. LAZARRI engaged in a sustained effort to locate her husband or that she had any role in finding Defendant. *See* Smith, 2010 WL 2010870, at *3. Indeed, the Government maintains that "[n]one of the Sureties provided useful information to the USMS when [Defendant] initially fled." *Id.* at 4; *see*

5

Santana, 2009 WL 1132183, at *1 (noting that Defendant's brother who co-signed bond was "likely to have known about the defendant's location or to have been able to provide other assistance during the time he was at large").

### e. *Nature of Sureties*

Sureties urge the Court to consider that they are close family members, not professional suretors. Dkt. 62 at 6. However, the "rationale for considering this factor is that nonprofessional may not fully comprehend the risks incurred when executing a bail bond as a surety." United States v. Blake, No. 14-CR-0312 (CBA) (SMG), 2014 WL 6606692, at *3 (E.D.N.Y. Nov. 19, 2014). This factor alone is "insufficient to warrant setting aside [or remitting] the forfeiture." United States v. Billini, No. 99-CR-156 (JGK), 2006 WL 1586553, at *2 (S.D.N.Y. June 8, 2006). Here, Sureties do not allege that they did not understand the risks. Rather, SUSANA LAZARRI claims: "[w]hen I signed the bond I was informed that the case would last just a few months. Had I known that it would drag on for well over a year, I would not have signed the bond." Dkt. 61 at ¶ 3.

Sureties further claim that forfeiture will drastically impact their lives: if the sale proceeds, "[t]here will be no realistic hope of purchasing a new house – especially in the neighborhood that has been home to the family for so many years. In other words, full forfeiture will destroy Ms. Lazzari financially . . ."[2] Dkt. 62 at 6. But the issue of claimed financial hardship is irrelevant: "it is well established that the personal financial situation of the surety is not a basis for setting aside [or remitting] the forfeiture because it is the interest of justice that should be assessed, not the personal financial situation of the individual surety." Billini, 2006 WL 1586553, at *2; United States v. Pevzner, No. 08-CR-706 (RJD), 2010 WL 1993865, at *3

---

[2] At the November 30, 2015 hearing, SUSANA LAZZARI's attorney stated that she "has decided [] that she would prefer to sell the home to raise the money to pay the bond, and she's prepared to do that expeditiously." Dkt. 49 at 6–7.

6

(E.D.N.Y. May 18, 2010) ("The Court, however, may not consider the financial plight or interests of the movant.") (citing United States v. Gutierrez, 771 F.2d 1001, 1004 (7th Cir. 1985)).

As Sureties cite no evidence demonstrating a lack of understanding of the risks of posting bond, this factor does not favor remission.

f. *Additional Considerations: Deterrence Value of Forfeiture and Bond Amount*

Sureties argue that the $500,000 bond amount was "unusually high for a defendant not charged with any crime of violence or narcotics offense," and note that a co-defendant was released on a bond of $250,000. Dkt. 62 at 5. The Government requested a $500,000 bond because Defendant, a U.S. citizen and a "native of Argentina with strong connections to Argentina," presented a strong flight risk: his passport indicated "frequent travel" to Argentina, and he "not only ha[d] the ties to flee, but [also] . . . a significant incentive," as the charges carried up to 20 years in prison. Dkt. 53 at 6, 7. Contrary to Sureties' assertion, the amount is "well within the range of bonds set in comparable cases. *See*[,] *e.g.*, United States v. Galanis, 15 Cr. 643 (PKC) (bonds of between $250,000 and $3 million in a multi-defendant securities fraud case); United States v. Cohen, 15 Cr. 396 (LAK) (bonds of between $100,000 and $10 million for defendants in an accounting fraud case)." Dkt. 65 at 3.

Further, the deterrence value of total forfeiture is crucial, and the effectiveness and credibility of the bail system depends on its enforcement. Gambino, 17 F.3d at 575; Blake, 2014 WL 6606692, at *4; Santana, 2009 WL 1321783, at *1. Here, $500,000 was apparently insufficient to deter Defendant from fleeing. *See* Pevzner, 2010 WL 1993865, at *3 (deeming bail amount "clearly not excessive since it was not able to prevent [Defendant's] flight").

**III. Balancing of the Factors**

7

On this record, there is no basis for the relief Sureties request. Defendant clearly absconded willfully; the Government has incurred, and in light of Defendant's ongoing fight against extradition will continue to incur, cost, inconvenience and prejudice in bringing Defendant to justice; Sureties provide no explanation or mitigation factors; Sureties did not provide information that helped apprehend Defendant; while Sureties are family members, they do not allege that they did not understand the risks of posting bond. Additionally, Sureties could have made this application at any time after forfeiture (November 2015) or apprehension (October 2016), but did not do so until the Court approved the contract for sale of the Bayside Property, thus making maximum effort to muddy the situation, rather than comply with their voluntarily-assumed obligation. Although it is unclear how long Defendant will remain detained in Argentina pending extradition, "[the] distinction [between an at-large and appearing Defendant] is not controlling, however, as '[t]he modern cases in this circuit addressing the issue of remission or discharge have all denied the requested relief, *even when the defendant had ultimately appeared.*' Gallego, 2003 WL 1193536, at *4." Blake, 2014 WL 6606692, at *4; *see also* Billini, 2006 WL 1586553, at *2 (declining to set aside bail forfeiture where defendant appeared before the court after having fled, been apprehended, and extradited).

## CONCLUSION

The Court thus DENIES Sureties' motion for remission.

The Receiver is directed to proceed with the sale, in accordance with the Court's order of November 28, 2016. Dkt. 57. The Clerk is directed to terminate all open motions.

Dated: New York, New York
December 6, 2016

SO ORDERED

*(signature)*

PAUL A. CROTTY
United States District Judge